**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENISE EZELL,
an individual,

Plaintiff,

Case No. 2:24-cv-11658
Hon. Robert J. White

V

MGM RESORTS INTERNATIONAL
a Delaware Corporation,

Defendant.

Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
Attorney for Plaintiff
25900 Greenfield Rd., Suite 210
Oak Park, MI 48237
248.968.4545/(f)248.968.4540

BUTZEL LONG, a professional corporation BRETT J. MILLER (P68612) BLAKE C. PADGET (P82978) Attorneys for Defendant MGM Resorts International 150 W. Jefferson Ave, Ste 100 Detroit, Michigan 48226 (313) 225-5316
millerbr@butzel.com

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1. Plaintiff denies the allegation contained in paragraph 1, as untrue.

2. Plaintiff denies the allegation contained in paragraph 2, as untrue.

3. Plaintiff denies the allegation contained in paragraph 3, as untrue.

WHEREFORE, Plaintiff ask this Court to deny Defendant's Motion To Dismiss for the reasons stated in her brief.

Dated: October 17, 2024

Respectfully submitted,

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land,
P.C. 25900 Greenfield Rd.,
Suite 210 Oak Park, MI 48237-
1267 248.968.4545 / (f)
248.968.4540 ill4law@aol.com
**Attorney for PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENISE EZELL,
an individual,

Plaintiff,

V

MGM RESORTS INTERNATIONAL
a Delaware Corporation,

Defendant.

Case No. 2:24-cv-11658
Hon. Robert J. White

Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
Attorney for Plaintiff
25900 Greenfield Rd., Suite 210
Oak Park, MI 48237
248.968.4545/(f)248.968.4540

BUTZEL LONG, a professional corporation BRETT J. MILLER (P68612) BLAKE C. PADGET (P82978) Attorneys for Defendant MGM Resorts International 150 W. Jefferson Ave, Ste 100 Detroit, Michigan 48226 (313) 225-5316
millerbr@butzel.com

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

*PRIMARY CONTROLLING AUTHORITY* ........ *iii*

*ISSUES PRESENTED* ........ *iv*

*I. FACTS* ........ *1*

*II. LEGAL STANDARDS* ........ *2*

*III. ARGUMENT* ........ *4*

**1. Whether this Court has personal jurisdiction over MGM Resorts International where Plaintiff has failed to plead any facts regarding jurisdiction for this foreign entity.** ........ **4**

**2. Whether an award of attorney's fees is appropriate under 28 USC §1927 where Plaintiff has maintained this action against MGM Resorts International despite knowing they are the improper party.** ........ **16**

*CONCLUSION* ........ *18*

# PRIMARY CONTROLLING AUTHORITY

**Cases**

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)... 12
*Burrell* v *MGM Grand Detroit, et al*., 2016 U.S. Dist. LEXIS 155903 (E.D. Mich. 2016)......... 18
*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).................................... 2, 4, 12
*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998).......................................... 2
*InFlight Devices Corp*. v. *Van Dusen Air, Inc*., 466 F.2d 220, 224 (6th Cir.1972)........................ 7
*International Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997) ........... 2
*Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir.1988) ........................................... 8
*Nationwide Mut'l Ins. Co.* v. *Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir.1996)*................ 4
*Neogen Corp*. v. *Neo Gen Screening, Inc*., 282 F. 3d 883, 887 (6th Cir.. 2002)................... passim
*Reynolds* v. *Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115* (6th Cir. 1994).............................. 7
*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). .................................. 13
*Schwartz* v *Electronic Data System*, Inc., 913 F.2d 279, 283 (6th Cir. 1990)......................... 15, 16
*Serras* v. *First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir.1989)* ............................... 4
*Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971)................................................ 8
*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991) ...................................................... 3
Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir.1989)............................. 7
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)......................................................................................................................... 12
*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)...................... 13

**Rules**

Rule 12(b)(2) of the Federal Rules of Civil Procedure.................................................................. 6

**Mich. Comp. Laws**

Mich. Comp. Laws § 600.711......................................................................................... 7, 12
Mich. Comp. Laws § 600.715......................................................................................... passim

## ISSUES PRESENTED

1. Whether this Court has personal jurisdiction over MGM Resorts International where Plaintiff has failed to plead any facts regarding jurisdiction for this foreign entity.

   Plaintiff states: Yes

   Defendant states: No

2. Whether an award of attorney's fees is appropriate under 28 USC §1927 where Plaintiff has maintained this action against MGM Resorts International despite knowing they are the improper party.

   Plaintiff states: No

   Defendant states: No

## I. FACTS

Defendant MGM owns MGM Grand Detroit (located at 1777 3rd Avenue Detroit, MI 48226) where this cause of action arose (ECF No. 6, PageID 49). On or around October 30, 2023, Plaintiff went to Defendant MGM's casino to gamble (ECF No. 6, PageID 49).

While playing Progressive Blackjack with one other participant, Plaintiff won a jackpot totaling over $127,000 (See Exhibit 1) (ECF No. 6, PageID 50). Plaintiff gave her driver's license to one of Defendant MGM's pit bosses so that she could obtain her winnings (ECF No. 6, PageID 50). After approximately fifteen minutes, Plaintiff was informed by another Defendant MGM employee that she would not be receiving her winnings because she was trespassing (ECF No. 6, PageID 50).

The employee told Plaintiff that in 2015 she was escorted out of the casino for panhandling (ECF No. 6, PageID 50). In 2015, Plaintiff was asked to leave the casino after having an argument with her cousin at the blackjack table regarding some money (ECF No. 6, PageID 51). In 2015 when Plaintiff was being escorted out of the casino, Plaintiff asked the Defendant MGM's security guard, "how long will this last?" and the security guard stated, "24 to 48 hours." (ECF No. 6, PageID 51).

Plaintiff was not given any notice stating that she was permanently barred from Defendant MGM's casino (ECF No. 6, PageID 51). Plaintiff continued to gamble at the casino over the years playing Progressive Blackjack (ECF No. 6, PageID 51).

Plaintiff submitted a dispute letter to the Michigan Gaming Control Board as she was told to do by Defendant MGM's employees (ECF No. 6, PageID 51). The Michigan Gaming Control Board responded by stating that, "The Board has no authority to award any money or other relief directly to a patron (ECF No. 6, PageID 51). Defendant MGM responded to Plaintiff's dispute letter and "concluded that MGM Grand Detroit, LLC acted appropriately" (ECF No. 6, PageID 51). Plaintiff now brings this civil suit to recover her winnings.

## II. LEGAL STANDARDS

When a defendant challenges personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *International Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997). In the instant matter, because the Court did not conduct an evidentiary hearing on the matter of personal jurisdiction, Plaintiff must make only a prima facie showing, and the Court views the evidence in the light most favorable to Plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th

Cir.1998); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). The Court notes that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). The Court does not, however, consider facts proffered by the defendant that conflict with those offered by the plaintiff. *Id.* at 1459.

## III. ARGUMENT

1. Whether this Court has personal jurisdiction over MGM Resorts International where Plaintiff has failed to plead any facts regarding jurisdiction for this foreign entity.

The plaintiff has the burden of establishing the district court's personal jurisdiction over defendant. *Nationwide Mut'l Ins. Co.* v. *Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir.1996)*. Where the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering defendant's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc.* v. *Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996).

Under these circumstances, this court will **not** consider facts proffered by the defendant that conflict with those offered by the plaintiff, and **will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2)**. *Neogen Corp.* v. *Neo Gen Screening, Inc.*, 282 F. 3d 883, 887 (6th Cir. 2002)(quoting *Serras* v. *First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir.1989),*

Plaintiff will discuss the *Neogen* case. It is the case that Defendant cited in its motion. In *Neogen*, the plaintiff was in the business of developing and marketing a range of health care, food, and animal-related products and services,

including certain diagnostic test kits. *Neogen* at 886. Its principal place of business is in Lansing, Michigan, but the plaintiff also has places of business in Florida, Illinois, and Kentucky. *Neogen* at 886. The plaintiff alleges that it has used the "Neogen" name and trademark continuously and extensively in interstate commerce, and that it has registered the mark with the U.S. Patent and Trademark Office. Its website is found at www.neogen.com. *Neogen* at 886.

The defendant performs diagnostic testing of blood samples from newborn infants. *Neogen* at 886. A closely-held Pennsylvania corporation, the defendant has its sole place of business in Pittsburgh. *Neogen* at 886. Approximately ninety percent of the 215,000 tests that the defendant performed in 1999 were generated through contracts with hospitals and governmental agencies around the world, none of which were located in Michigan. *Neogen* at 886. The remainder of the tests performed by the defendant in 1999 were done at the request of individual physicians or coroners with whom the defendant did not have a prior contract. *Neogen* at 886.

Such customers not under contract can obtain testing services by telephoning or e-mailing the defendant to request information and "filter blood collection forms." *Neogen* at 886. The defendant then mails the collection form to the customer, who collects the sample and sends it back to the company in a preaddressed return envelope for testing. *Neogen* at 886. The customer can then

obtain the test results through the mail, or on the defendant's website with a password provided by the company. *Neogen* at 887. Customers pay for the tests by mailing a check to the defendant's Pittsburgh office. The defendant tested 14 blood samples from Michigan coroners in 1999, and anticipated about the same number for 2000. *Neogen* at 887. In earlier years, the defendant also received and tested an undisclosed number of samples from Michigan residents. *Neogen* at 887.

The defendant's only continuous advertising is through its website, www.neogenscreening.com. *Neogen* at 887. The website provides information about the defendant's services, lists the e-mail addresses of personnel, and allows prospective customers to print blood-collection forms to be mailed along with blood samples to Pittsburgh. *Neogen* at 887. The defendant's website is internationally accessible. *Neogen* at 887. The plaintiff claims that the defendant's contacts with Michigan through its website and its approximately 14 yearly mail-order transactions with Michigan customers subject the defendant to the jurisdiction of the United States District Court for the Western District of Michigan. *Neogen* at 887.

The district court dismissed the suit for lack of personal jurisdiction in favor of the defendant pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The plaintiff has appealed. *Neogen* at 886. For the reasons set forth below, we

REVERSE the judgment of the district court in *Neogen* and REMAND the case for further proceedings consistent with this opinion. *Neogen* at 886.

"To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Neogen* at 888. ( quoting *Reynolds* v. *Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115* (6th Cir. 1994)) "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds* at 1115 (quoting *InFlight Devices Corp*. v. *Van Dusen Air, Inc*., 466 F.2d 220, 224 (6th Cir.1972)).

First, Plaintiff will address personal jurisdiction. Personal jurisdiction may be either general or specific in nature, depending on the nature of the contacts in a given case. *Reynolds* at 1116 (quoting Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir.1989).

Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident corporations pursuant to Mich. Comp. Laws § 600.715, and "general" jurisdiction pursuant to Mich. Comp. Laws § 600.711. Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. *Neogen* at 888. General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation

regardless of whether the claim at issue is related to its activities in the state or has an in-state effect. *Neogen* at 888.

The *Neogen* court looked at the factors Pursuant to MCL 600.715 to determine if limited jurisdiction extends to nonresident corporations:

> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

The court in *Neogen* held that the plaintiff did present a prima facie showing that the defendant transacted business in Michigan.

The *Neogen* court stated that the "transaction of any business" necessary for limited personal jurisdiction under § 600.715(1) is established by **"the slightest act of business in Michigan."** *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir.1988) (quoting *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971)).

The *Neogen* court reasoned that the plaintiff presented a prima facie case that the defendant transacted business in Michigan when it accepted blood for testing from Michigan, mailed the test results to Michigan, made the results

accessible to its Michigan customers on its website, and accepted payment through the mail from Michigan. *Neogen* at 888.

Furthermore, the *Neogen* court stated that the limited jurisdiction under the MCL 600.715(5) was satisfied because the defendant's blood-test transaction in Michigan residents constitute "entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

In this present case, Defendant MGM Resort International has a website that customers can access including Michigan residents. This website located at https://www.mgmresorts.com/en/mgm-rewards.html?kbid=2584521&ecid=PS_BB_RSRT_GGLB_EVDOMES_LV_MR_010124&gad_source=1&gclid=EAIaIQobChMIvcyG38GViQMVxzIIBR2uYia9EAAYASAAEgKPP_D_BwE.

At this website, Michigan residents are allowed to book hotel rooms, join reward programs, and earn points.

Furthermore, Defendant advertises in Michigan and across the country:

**Marketing (See Exhibit 2, MGM Resort International's 2023 Annual Report Page 4)**

> Our marketing efforts are conducted through various means, including our loyalty programs. **We advertise on radio, television, internet and billboards and in newspapers and magazines in selected cities throughout the United States** and overseas, as well as by direct mail, email and through the use of social media. **We also advertise through our regional marketing offices located in major U.S.** and foreign cities. Our direct marketing efforts utilize advanced analytic techniques that identify customer preferences and help predict future customer behavior, allowing us to make more relevant offers to customers, influence incremental visits, and help build lasting customer relationships.

> MGM Rewards, our customer loyalty program, is a tiered program and allows customers to qualify for benefits across our participating properties and in both gaming and non-gaming areas, encouraging customers to keep their total spend within our casino properties. **As members advance through tiers, a host of member benefits are unlocked including priority access, exclusive events and experiences, and the opportunity to redeem MGM Rewards for hotel stays, food and beverage, and other MGM Resorts experiences.** We also offer the Golden Lion Club for gaming focused customers, in addition to M life, at MGM China. The structured rewards systems based on member value and tier level ensure that customers can progressively access the full range of services that the properties provide. Our loyalty programs focus on building a rewarding relationship with our customers, encouraging members to increase both visitation and spend.

Therefore, Plaintiff has made a prima-facie showing that Defendant conducted business in Michigan. This would satisfy MCL 600.715(1) transaction of any business within the state. Also, since Michigan residents are allowed to book a hotel room and join a rewards program at the MGM Resort International website site, Plaintiff has made a prima facie showing that booking a room and entering into a rewards program with Defendant would be considered entering into a contract. This would satisfy MCL 600.715(5) entering into a contract for services.

Finally, MCL 600.715(3) would allow the forum state to have limited jurisdiction over Defendant. It states, the ownership, **use,** or **possession** of any real or tangible personal property situated within the state. When reviewing Defendant's 2023 Annual page 1 states that Defendant MGM Resorts International is the "Company." Page 83 of the 2023 Annual Report states that the "Company" leases real estate for MGM Grand Detroit – see below.

**BUSINESS (See Exhibit 2, MGM Resort International's 2023 Annual Report Page 1)**

***MGM Resorts International is referred to as the "Company,"*** *"MGM Resorts," or the "Registrant," and together with its subsidiaries may also be referred to as "we," "us" or "our." MGM China Holdings Limited together with its subsidiaries is referred to as "MGM China." Except where the context indicates otherwise, "MGP" refers to MGM Growth Properties LLC together with its consolidated subsidiaries.*

**LEASES (See Exhibit 2, MGM Resort International's 2023 Annual Report Page 83)**

*The VICI lease and ground subleases.* ***The Company leases the real estate*** *assets of Luxor, New York-New York, Park MGM, Excalibur, The Park,* ***MGM Grand Detroit****, Beau Rivage, Borgata, Empire City, MGM National Harbor, MGM Northfield Park, and MGM Springfield* ***from VICI****. The VICI lease commenced April 29, 2022 and has an initial term of 25 years, with three 10-year renewal periods, exercisable at the Company's option, with a fixed 2% rent escalator for the first 10 years, and thereafter, an escalator equal to the greater of 2% and the CPI increase during the prior year subject to a cap of 3%. Additionally, the VICI lease provides VICI with a right of first offer with respect to any further gaming development by the Company on the undeveloped land adjacent to Empire City, which VICI may exercise should the Company elect to sell the property. Annual cash rent payments for the first lease year that commenced on April 29, 2022 was $860 million.*

MGM Resort International (Company) leases MGM Grand Detroit from Vici. Again, Plaintiff has presented a prima facie that limited jurisdiction exists under MCL 600.715(3), where Defendant ownership, use, or possession of any real or tangible personal property situated within this state.

For general jurisdiction, Plaintiff will rely on MCL 600.711(3). It states that, "a [corporation] carrying on of a continuous and systematic part of its general business within the state." In the present case, Defendant MGM Resorts International has continuous and systematic business within Michigan where it

owns and operates the MGM Grand Detroit casino. Therefore, Plaintiff has presented a prima facie showing the general jurisdiction is present.

Next, Plaintiff is required to present a prima facie case that the district court's exercise of personal jurisdiction would not offend due process. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996).

"Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a `substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and where the defendant's conduct and connection with the forum are such that he "`should reasonably anticipate being haled into court there.'" *Burger King* at 474, (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "This `purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts, or of the `unilateral activity of another party or a third person.'" *Burger King* at 474.

This court has distilled these due process requirements into a three-part test. In order for a court to assert limited personal jurisdiction over an out-of-state defendant, the following three criteria must be met:

i. the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

ii. the cause of action must arise from the defendant's activities there; and

iii. the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

In *Neogen*, the court relied on the ruling in *Zippo* where the court reasoned that “A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). *Zippo* held that the defendant manifested its purposeful availment of the privilege of acting in Pennsylvania when it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the result of these Internet contacts would be to perform services for Pennsylvania customers in part through the transmission of electronic messages to Pennsylvania. *Zippo* at 1126.

*Neogen* stated that the defendant provided passwords to get test result as part of a contract. *Neogen* at 890. The defendants reached out to Michigan residents. The defendant held itself out as welcoming Michigan business. *Neogen* at 891.

Similar to this present case, Defendant made available for Michigan residents to use their website to book rooms, earn rewards, and join exclusive membership clubs. Individuals are assigned a login to get access to these services. *Neogen* at 891. Therefore, as the defendant in *Neogen*, Defendant has purposefully availed itself through their website where it intended to interact with the residents of Michigan regarding services. *Neogen* at 891. So, the first prong has been met.

The second prong part test is the cause of action must arise from the defendant's activities there. In *Neogen*, the court held that the use of the defendant's tradename on its website and its business contacts with Michigan residents under that name could have caused a variety of economic harms in Michigan. For those reasons stated, the *Neogen* court stated that the second prong "arising out of" has been met. *Neogen* at 892.

In this present case, Defendant's contact with Michigan is its casino. Plaintiff's cause of action occurred at this very casino. Plaintiff won a jackpot of $127,000 and Defendant refused to pay her. This civil suit followed. So, the second prong has been met in this present case.

Finally, the third prong is the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

In *Neogen*, the court stated that, [b]ecause the defendant knew that it was doing business with Michigan customers, and performed part of its services in Michigan by mailing test results there and providing special passwords to Michigan customers, the defendant could reasonably anticipate being haled into a court in Michigan. *Neogen* at 893.

Here, again Defendant in this present case had similar interaction with the residents of Michigan. The resident could sign into a website and get special bonus points and rewards. More importantly, Defendant had extensive advertising including radio, television, internet, billboards and in newspapers and magazines in selected cities throughout the United States which would include Michigan. Defendant could reasonably anticipate being sued in Michigan for these reasons. Therefore, Plaintiff has made a prima facie showing for this third prong.

Next, Defendant argued "that the parent corporation must engage in more than a normal parent-subsidiary relationship in order to be amenable to suit in the jurisdiction where its subsidiary is located." *Schwartz* v *Electronic Data System*, Inc., 913 F.2d 279, 283 (6th Cir. 1990). Defendant further states that "the evidence clearly establishes MGM Resort International has no contact with Michigan other than the fact that it is the parent of a **subsidiary corporation**: **MGM Grand Detroit, LLC**." (ECF No 10. Page ID 93)(See Exhibit 3).

The fact that, Defendant is making an argument that MGM Grand Detroit, LLC., is a corporation is very troubling as Plaintiff believes Defendant is attempting to mislead this Court. Defendant is aware that MGM Grand Detroit, LLC is not a corporation as stated. This is further supported by Defendant's assertion where it stated that, "Plaintiff has not added **MGM Grand Detroit, which is an LLC** with members who are residents of Michigan," (ECF No 10. Page ID 95) (See Exhibit 4). I am sure Defendant will argue that this was a typo, but it is concerning because of the case that Defendant relied on *Schwartz*.

*Schwartz* discussed a ***parent "corporation"*** and "***corporate" subsidiary*** relationship not an LLC. The *Schwartz* case can't help Defendant because MGM Grand Detroit is an LLC not a corporation.

*Schwartz* stated, any case where federal court jurisdiction depends on the relationship between a ***corporate parent*** and its ***corporate subsidiary***, federal court jurisdiction over the ***subsidiary*** is determined by that ***corporation's*** citizenship, not the citizenship of the parent. *Schwartz* at 283.

One must wonder if Defendant was attempting to refer to MGM Grand Detroit, LLC as a corporation, so that it could rely on *Schwartz*.

2. Whether an award of attorney's fees is appropriate under 28 USC §1927 where Plaintiff has maintained this action against MGM Resorts International despite knowing they are the improper party.

Defendant is attempting to have this court sanction Plaintiff because Defendant is alleging that Plaintiff has not sued the proper party. Plaintiff will rely on the argument set forth regarding personal jurisdiction above.

Furthermore, Plaintiff is allowed to sue the owner of the casino despite what Defendant's attorneys are alleging. In Defendant's 2023 Annual Report, the year this incident occurred, Defendant list MGM Grand Detroit, under their Regional Operations (ECF 6, PageID. 48). Therefore, MGM Resort International is the owner of the casino.

**Regional Operations See Exhibit 2, MGM Resort International's 2023 Annual Report Page 2 ).**

**Regional Operations consists** of the following casino properties: **MGM Grand Detroit in Detroit, Michigan**; Beau Rivage in Biloxi, Mississippi; Gold Strike Tunica in Tunica, Mississippi (until its disposition in February 2023); Borgata in Atlantic City, New Jersey; MGM National Harbor in Prince George's County, Maryland; MGM Springfield in Springfield, Massachusetts; Empire City in Yonkers, New York; and MGM Northfield Park in Northfield Park, Ohio.

Furthermore, Defendant's initial email to Plaintiff's attorney identified MGM Grand Detroit, LLC as an entity that manages the property (See Exhibit 5, initial email from Defendant). Plaintiff does not have to sue an entity that manages the property.

Defendant further argues that Plaintiff is the proper party because Plaintiff submitted a dispute letter to the gaming board against MGM Grand Detroit, LLC (ECF 6, PageID. 52). However, Plaintiff's sole purpose for turning the dispute letter in is because a casino employee told her to submit the letter. Plaintiff was

told that was the only way she was going to get her jackpot of $127,000 by submitting the letter to the gaming board. Plaintiff didn't submit the letter because she believed MGM Grand Detroit, LLC was the proper party to sue.

Finally, Defendant attached an opinion *Burrell* v *MGM Grand Detroit*, *et al*., 2016 U.S. Dist. LEXIS 155903 (E.D. Mich. 2016) issued by Judge Steeh. It is bizarre that Defendant attached this opinion as it is clear that the plaintiff in that matter failed to respond to the motion. How the *Burrell* opinion is relevant to this present matter is unknown.

**CONCLUSION**

For the above state reasons, Plaintiff asks this Honorable Court to deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

Dated: October 17, 2024

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land,
P.C. 25900 Greenfield Rd.,
Suite 210 Oak Park, MI 48237-
1267 248.968.4545 / (f)
248.968.4540 ill4law@aol.com
**Attorney for PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief in Support Of Plaintiff's Response to Defendants' Motion to Dismiss For Lack of Personal Jurisdiction with the Court Clerk via CM/ECF on October 17, 2024, to serve all parties.

/s/Ivan L. Land
Ivan L. Land